## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RALPH VETH,**                                          **CIVIL ACTION**
    **Plaintiff**

**VERSUS**                                                **No. 12-1805**

**SUN LIFE ASSURANCE COMPANY**                   **SECTION "E"**
**OF CANADA,**
    **Defendant**

### ORDER AND REASONS

Before the Court is a motion for summary judgment filed by defendant Sun Life Assurance Company of Canada ("Sun Life").[1]  Plaintiff Ralph Veth ("Veth") opposes the motion.[2]  For the reasons set forth below, Sun Life's motion is denied.

### I.    BACKGROUND

Sun Life is the administrator and fiduciary of a group policy of disability insurance, Sun Life Assurance Company of Canada Policy Number 07696 (the "Policy"), issued by Sun Life to Veth's former employer, Financial Industry Regulatory Authority ("FINRA").[3]  In March 2010, Veth suffered a stroke which left him unable to continue his career as an attorney with FINRA.[4]  After the stroke, Sun Life paid Veth short term disability benefits during the Policy's 180-day elimination period.[5]  The elimination period ended on

---

[1] R. Doc. 17.

[2] R. Doc. 20.

[3] *See* R. Doc. 17, Ex. 1.

[4] R. Doc. 17 at 1.

[5] *See* R. Doc. 17, Ex. 3.

September 11, 2010.[6]

Under the terms of the Policy, a claimant is entitled to long term total disability benefits during the first twenty-four months after the end of the elimination period if he is not working, or is earning less than 20% of his Indexed Total Monthly Earnings, and he qualifies as "Totally Disabled," defined during this period as being, "because of Injury or Sickness, unable to perform each and every duty of his Own Occupation."[7] After the initial twenty-four month period, the Policy's definition of "Totally Disabled" changes.  Instead of the claimant being required to show he is "unable to perform each and every duty of his Own Occupation," the claimant is now required to show he is "unable to perform with reasonable continuity any Gainful Occupation for which he is, or becomes, reasonably qualified for by education, training or experience."[8]  If a claimant meets the Policy's definition of Totally Disabled for the first twenty-four month period but does not meet the definition of Totally Disabled after that period, he is only entitled to benefits for the first twenty-four month period.

The Policy further provides that, generally, no long term disability benefits will be paid if a beneficiary's claimed total or partial disability is the result of a "Mental Illness."[9] The Policy provides that long term disability benefits will only be paid to a claimant suffering a Mental Illness if, during the first twenty-four months after the end of the

---

[6] *Id.*

[7] *See* R. Doc. 17, Ex. 3 at p. 12.  The Policy also defines "Partial Disability," but Veth does not claim to meet that definition.

[8] *Id.*

[9] *Id.* at 20.

elimination period, the claimant shows he is under the continuing care of a psychiatrist.[10] After the end of the of the first twenty-four month period, a claimant suffering a Mental Illness is only entitled to long term disability benefits if he shows he is confined to a psychiatric hospital or institution.[11]

On April 28, 2011, Sun Life sent Veth a letter informing him that it classified his claimed disability as a Mental Illness.[12]  In light of this determination, Sun Life advised Veth he was only entitled to receive benefits for the twenty-four months after the end of the elimination period, assuming he proved he was under the continuing care of a psychiatrist, and thus his benefits would terminate on September 12, 2012.[13]  The April 2011 letter further states that "[i]f you disagree with any part of our decision, you may request in writing a review within 180 days after receiving this notice."[14]

On October 24, 2011, Veth, through counsel, filed a timely appeal of Sun Life's classification of his stroke as a Mental Illness and Sun Life's determination that he would not be entitled to benefits after the first twenty-four month period.[15]  At the close of his October 24, 2011 letter, Veth informed Sun Life of his "intent to file suit if the decision is

---

[10] *Id.*

[11] *Id.*

[12] R. Doc. 20, Ex. 1.  The parties have not provided the Court with copies of any correspondence between Veth and Sun Life prior to April 2011.  In a January 24, 2012 letter, however, Sun Life explains that Veth's elimination period ended on September 11, 2010.  *See* R. Doc. 20, Ex. 3.  The letter also explains that Sun Life approved Veth's claim for long term benefits on November 10, 2010, that it paid Veth benefits for the period between September and November 2010, and that it paid Veth benefits going forward after its November 2010 approval of his claim.

[13] R. Doc. 20, Ex. 1.

[14] *Id.*

[15] R. Doc. 20, Ex. 2.

not reversed" and that he would seek reimbursement of all costs and attorney's fees incurred in connection with any ensuing court proceeding.[16]

On January 24, 2012, Sun Life sent Veth a letter stating that "based upon [Sun Life's] review of the entire file . . . the determination that Mr. Veth's disabling condition(s) were the result of emotional or psychological issues was correct."[17]   As a result, Sun Life "reaffirm[ed] such determination on appeal."[18]  Sun Life also stated that its determination in the January 24, 2012 letter was based on the available documents in Veth's file, and thus it would "continue with ongoing claims management and evaluation" even after issuing the letter and that it would complete "thorough medical and vocational reviews" at the end of the twenty-four month benefits period.[19]  Finally, the January 2012 letter stated that "[a]ll administrative remedies have been exhausted" and advised Veth of his "right to bring a civil action" under ERISA.[20]

On May 4, 2012, Sun Life sent Veth a letter stating that "[i]n order to extend disability benefits beyond September 11, 2012, Mr. Veth must satisfy the definition of Total Disability as defined by the Policy, which states, 'After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation.'"[21] According

---

[16] *Id.*

[17] R. Doc. 20, Ex. 3.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] R. Doc. 17, Ex. 2.

to Sun Life, this request served as Sun Life's initiation of the "change in definition review" provided for in the Policy. Sun Life also provided Veth with forms and a request for documentation in connection with his claim for benefits beyond the initial twenty-four month benefits period.[22] It is unclear why Sun Life felt it necessary to initiate a change in definition review in light of its classification of Veth's disability as a Mental Illness, which meant Veth was not entitled to benefits beyond the initial twenty-four month period regardless of his ability to work in his own or any occupation. In fact, the May 2012 letter reiterates Sun Life's position that its classification of Veth's disability as a Mental Illness meant his benefits would end after twenty-four months.[23]

On May 23, 2013, Veth responded to Sun Life by submitting additional documents.[24] Veth also requested that Sun Life "reconsider its January 24, 2012 denial of benefits."[25] On June 14, 2012, Sun Life sent Veth another letter requesting that Veth complete his proof of claim for benefits beyond the initial twenty-four month benefits period.[26]

Veth then filed this federal lawsuit on July 11, 2012.[27] Veth alleged Sun Life's decision not to pay benefits beyond September 12, 2012 was a breach of Sun Life's fiduciary duty and an arbitrary and capricious failure to pay benefits. As a result, Veth claimed he was entitled to total disability benefits beyond the twenty-four month benefits period and

---

[22] *Id.*

[23] *Id.* at p. 2.

[24] R. Doc. 19, Ex. 5.

[25] *Id.*

[26] R. Doc. 19, Ex. 6.

[27] R. Doc. 1.

to be reimbursed by Sun Life for the costs and attorney's fees "expended by [Veth] in pursuit of his claims." Veth prayed for judgment "in his favor . . . for benefits, enforcing his rights and clarifying his rights to future benefits, in such an amount as will fairly and fully compensate him according to law, together with legal interest, costs, and attorney's fees and for legal and equitable relief as this Court is empowered to grant."[28]

After filing suit, on July 23, 2012, Veth submitted additional proof of claim documents to Sun Life.[29] On August 10, 2012, Sun Life moved to dismiss Veth's lawsuit for failure to state a claim under Rule 12(b)(6) on the ground that Veth failed to exhaust the requisite administrative remedies available to him prior to filing this federal lawsuit.[30] While the lawsuit and motion to dismiss was pending, on August 27, 2012, Sun Life advised Veth it still had not completed its change in definition review and that it required Veth to undergo an Independent Neuropsychological Examination ("INE").[31] Sun Life also stated that, if its review was not complete by September 11, 2012, it would continue to pay Veth benefits beyond that date pursuant to a reservation of rights.[32]

Several months after suit was filed, and with the motion to dismiss still pending, on October 11, 2012, Sun Life advised Veth it had reviewed  the results of the INE and determined that Veth "remains eligible for continuing [benefits] beyond September 11,

---

[28] *Id.*

[29] R. Doc. 19, Ex. 7.

[30] R. Doc. 5.

[31] R. Doc. 17, Ex. 3.

[32] *Id.*

2012."[33]  The letter goes on to say Sun Life concluded Veth "is disabled according to the definition of disability in his Policy."[34]

On January 2, 2013, the Court denied Sun Life's motion to dismiss Veth's complaint and ordered Veth to amend his complaint in light of the issues raised by Sun Life's motion to dismiss and the October 2012 letter.[35]  On January 4, 2013, Veth filed an amended complaint reiterating his claim that Sun Life's handling of his claim was arbitrary and capricious and repeating his claim for attorneys' fees and costs.[36]  Veth's amended complaint drops his previously asserted claims for benefits, for enforcement of his rights under the Policy, and for clarification of his right to future benefits under the Policy.  Veth's amended prayer is "for judgment in his favor and against Defendant . . . in such an amount as will fairly and fully compensate him according to law for costs and attorney's fees, together with legal interest, and for legal and equitable relief as this Court is empowered to grant."[37]

## II.   ARGUMENTS OF THE PARTIES

In the motion for summary judgment now before the Court, Sun Life argues that because Veth's claim for benefits was never formally denied, Veth does not have a cause of action under ERISA as a matter of law.  Because Sun Life continues to pay benefits to Veth,

---

[33] R. Doc. 17, Ex. 4.

[34] *Id.*  Presumably, this statement means Sun Life had not only changed its classification of Veth's disability from being due to Mental Illness to being due to Sickness or Injury, but had also made the determination that Veth was unable to perform any Gainful Occupation due to Sickness or Injury.

[35] R. Doc. 8.

[36] R. Doc. 11.

[37] *Id.*

Sun Life contends it is entitled to judgment dismissing Veth's claims in their entirety. Sun Life's motion for summary judgment does not specifically address Veth's claim for attorney's fees and costs, nor does it address any of Veth's specific ERISA claims.

In response, Veth argues Sun Life is estopped from asserting a "failure to exhaust" argument in light of the January 24, 2012 letter and that Veth's participation in Sun Life's administrative process and change in definition review was "logically rendered futile" in light of Sun Life's determination that Veth's stroke was a Mental Illness. Veth agrees Sun Life never stopped paying him benefits, but he nevertheless contends Sun Life's initial classification of his stroke as a mental illness, coupled with Sun Life's subsequent denial of his appeal, amounted to an arbitrary and capricious handling of his claim.

### III.   STANDARD OF LAW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 ; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists.

*Celotex*, 477 U.S. at 322-23. Once the burden has shifted, the non-moving party must direct the Court's attention to something in the pleadings or other evidence in the record that sets forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist. *Id.* at 324. The non-moving party cannot simply rely on allegations or blanket denials of the moving party's pleadings as a means of establishing a genuine issue of material fact, but instead must identify specific facts that establish a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). Likewise, an affidavit cannot be used to preclude summary judgment unless its contains competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). "[A] self-serving affidavit, without more evidence, will not defeat summary judgment." *Sanchez v. Dallas/Fort Worth Int'l Airport Bd.*, 438 F. App'x 343, 346-47 (5th Cir. 2011) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 & n.49 (5th Cir. 2005)); *see also United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996). If the dispositive issue is one on which the non-moving party will bear the burden of proof at trial, however, the moving party may satisfy its burden by simply pointing out that the evidence in the record is insufficient with respect to an essential element of the non-moving party's claim. *See Celotex*, 477 U.S. at 325.

"An issue is material if its resolution could affect the outcome of the action." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but

refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 150-51 (2000).   All reasonable inferences are drawn in favor of the non-moving party. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).   There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

## IV.   ANALYSIS

### A.   Civil Enforcement of ERISA Disputes and the Availability of Attorney's Fees and Costs

The parties agree the Policy constitutes an employee benefit plan subject to the Employee Retirement Income Security Act ("ERISA"), codified at 29 U.S.C. § 1001 *et seq.* 29 U.S.C. § 1132 provides for "civil enforcement" of ERISA disputes.   Specifically, § 1132(a) provides that a "[a] civil action may be brought . . . by a participant or beneficiary . . . (A) for the relief provided for in subsection (c) of this section,[38] or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* at § 1132(a) (footnote added).

29 U.S.C. § 1132(g) provides that "[i]n any action . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of

---

[38] 29 U.S.C. § 1132(c) provides that a claimant may bring a claim relating to an administrator's refusal to supply requested information and provides for a penalty to be assessed against an administrator for failure to provide its annual report in a complete form.   This subsection is not at issue in this case.

action to either party." *Id.* at § 1132(g)(1).  Attorney's fees and costs under this section are not limited to cases involving allegations that an administrator's handling of a claim was arbitrary and capricious, but those remedies are available, subject to the Court's discretion, in such situations.[39]  Likewise, attorney's fees and costs are not limited to cases involving a denial of benefits, nor are they limited to "prevailing parties." *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 130 S. Ct. 2149, 2156 (2010) ("a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fees award under § 1132(g)(1)").  Instead, attorney's fees and costs are available in "any action" arising under ERISA and may be awarded to "either party," *see* 29 U.S.C. § 1132(g)(1), so long as the party seeking fees and costs shows "some degree of success on the merits." *Hardt*, 130 S. Ct. at 2158.

The Fifth Circuit has stated that the district court should consider the following factors when determining whether to award fees and costs pursuant to § 1132(g):

    (1)    the degree of the opposing parties' culpability or bad faith;

    (2)    the ability of the opposing parties to satisfy an award of attorneys' fees;

    (3)    whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

    (4)    whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an

---

[39] Generally, the district court reviews a denial of benefits under an ERISA plan under a *de novo* standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the employee benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits, however, the proper standard of review is the more deferential "abuse of discretion" standard of review. *Id.* "'In applying the abuse of discretion standard," the district court considers whether a plan administrator "acted arbitrarily or capriciously." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215  (5th Cir. 1999) (quoting *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir. 1992)).  A benefits denial decision is arbitrary and capricious only if "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.*

ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5)     the relative merit of the parties' positions.

*Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980). "No one of these factors is necessarily decisive, and some may not be appropriate in a given case, but together they are the nuclei of concerns that a court should address in applying" § 1132(g)(1). *Id.*

### B.    Sun Life is Not Entitled to Summary Judgment on Veth's Claim for Attorney's Fees and Costs

Veth's only claim in this case is for attorney's fees and costs under § 1132(g). Such a claim exists entirely independent of the judge-made rule that a claimant must exhaust his administrative remedies before filing suit to recover benefits and of the deferential standard by which a district court assesses a denial of benefits. Indeed, as explained earlier, it is not even necessary to show benefits were actually denied before such a claim may be brought.

Sun Life has not addressed the material facts relative to Veth's § 1132(g) claim, let alone established it is entitled to dismissal of the claim as a matter of law. Based on the record and the parties' briefs, it is unclear whether Veth has achieved or will achieve the degree of success on the merits of his claim required by *Hardt*. Likewise, the facts relevant to the Court's application of the *Bowen* factors may or may not be in dispute. At this stage in the proceedings and based on Sun Life's motion for summary judgment, the Court cannot say that all material facts are undisputed or that Sun Life is entitled to judgment as a matter of law. As a result, summary judgment on Veth's § 1132(g) claim is not warranted.

### CONCLUSION

**IT IS ORDERED** that Sun Life's motion for summary judgment be and hereby is

**DENIED.**

As previously agreed,[40] the parties shall submit a complete, stipulated copy of the administrative record to the Court no later than **August 23, 2013**.  The parties will then file cross-motions relating to Veth's claim for attorney's fees and costs under § 1132(g) no later than **October 25, 2013.**   In light of the forgoing discussion, the parties should include a discussion of whether Veth has met the threshold "some degree of success on the merits" requirement enunciated in *Hardt* and, if so, whether an award of fees and costs is appropriate under the *Bowen* factors.  The parties will then each be given an opportunity to file oppositions to each other's briefs.   Oppositions shall be filed no later than **December 6, 2013**, at which time Veth's § 1132(g) claim will be taken under submission.

New Orleans, Louisiana, this __24th__ day of July, 2013.

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[40] *See* R. Doc. 26.

13